Appellant. Ms. Taramina for the Appellant, Ms. Hartman for the Appellee. Good morning. May it please the Court. Rosanna Taramina for Appellant, Enyinnaya Udo. I would like to reserve two minutes for rebuttal. Mr. Udo raises three claims on appeal. Beginning as we did in our brief with his ineffective assistance of counsel claim, Mr. Udo first challenges the decision of his trial counsel to, without adequate consideration or consultation, promise that Mr. Udo would take the stand to testify in the opening statement he made this promise. That Mr. Udo would take the stand to testify, to directly deny the allegations of the government's fact witnesses, and to affirmatively present an opposing version of the facts. This, coupled with Mr. Udo's counsel's failure to actually provide that testimony, constitutes ineffective assistance of counsel. We believe that at the very least, a remand for further record development under Rashad is warranted here if the Court finds that it can't. Don't you have a really high hurdle to jump over on the second strickling point of prejudice? There's videotape here of your client committing the crime, right? In the face of that, how could it possibly make a difference that the lawyer promised to produce Udo and then explained why he didn't? Certainly. That seems a trifle in comparison to the videotape, doesn't it? Well, the videotape only applies to one count of the 25 counts of conviction. Most of the other evidence at trial was simply provided by fact witnesses who came in and had a very strong self-interested motivation to tell the story that they did. In light of that testimony, there's also problems with the video in that, and counsel pointed this out in his examinations and during the summation, that the video had any number of different points, I think over 25 in the transcript where the transcript indicated that the videotape was, quote, inaudible. And I think 7 to 10 inaudible indications during the operative conversation about the work commuting expenses. So that's one thing. Also, the jury could very well have felt that there was an entrapment aspect of that video, that the officer came in wanting, for one purpose, wanting to make sure that Mr. Udo acted in a certain way and prompted him to do so. Initially, the videotape indicates that Mr. Udo calculated the correct, or calculated a tax form that did not account for commuter's expenses. And then the agent complained about having to pay for a refund, and then apparently they had a discussion about commuting. Now, that doesn't address the knowledge, or sorry, the willfulness element of whether or not the government could have proved or adequately proved that Mr. Udo was aware of what could or could not have been deducted. But I don't believe that the videotape in and of itself changes the calculus that just one juror could have refused to believe that, or could have thought the videotape was inadequate, could have refused to believe the government's fact witnesses in this case. And the actual fact testimony was not unassailable. There were some problems with the fact testimony. There was evidence that there were commuting expenses discussed. Some of the witnesses had less than perfect recollections and said that they didn't recollect their conversations in detail with Mr. Udo. One of the witnesses ended up taking their tax returns to someone else who calculated the exact same tax return as Mr. Udo, so on Formation R block. Another person, when they were initially questioned about it, indicated that she actually had verification of all the deductions she had taken and that they had burned in a fire. And then she changed her story to Mr. Udo actually made up the numbers after further questioning. So the witnesses' testimony, the facts against Mr. Udo were not unassailable. And the cases recognize that the prejudice here is inherent and it's significant. Many of the cases recognize it to be essentially presumed prejudice. And the cases that do discuss the fact that this is a close case, I believe it is either Williams or Uber, simply say, in a close case, a small error would tilt the balance. But this error is not small. It is, quote, monumental. The courts have universally characterized this type of error as egregious, significant. Did they characterize it as the type of error that Bell v. Cohn said is prejudicial? Well, interesting, Judge Griffith. I think what's going on in a lot of these cases is universally they are cases that are analyzed under the AEDPA standard. And the AEDPA requires the reviewing court to find that the state court, because we're reviewing a state court decision, applied an unreasonable interpretation of Supreme Court precedent. So all of these cases involve, or most of the cases involve grants of habeas corpus petitions in light of that standard, which is much higher than the standard that applies to this case. It's much higher than any, than abuse of discretion standard. And it's much higher than simply there's error here. Is the rule you want us to follow that every time in an opening statement, counsel says I'm going to produce the defendant, but then doesn't, that that's per se error, per se defective? No. I, no. Because the cases allow for, if there were further fact development, they, but I believe that the record is clear here. But the cases on the deficiency prong allow for an exception for unforeseen circumstances. So if there was a surprise at trial, if there was unexpected testimony, unexpected testimony that a diligent attorney wouldn't have expected, something like that, that then unforeseen circumstances would account for the, for counsel's decision to change course. That is not present here. So that's on the diligence prong. With respect to the prejudice prong, I do believe that the prejudice is inherent. I believe, but I also believe that in this case, because of the way counsel structured his He basically told the jury, you're going to have to, you have two diametrically opposed versions of the facts here. You're going to have to believe one or the other. And he never provided the other. So once you take that away, the jury, there's a negative inference, all of the cases, that's what the cases recognize. The jurors apply a negative inference to the defendant's case. And in fact, it, it essentially eviscerates the defendant's ability not to testify in addition to affecting his... Well, he set it up as he said, she said. He cross-examined a he said vote, correct? Right, he did. It's not as if he didn't do anything. He did. And, and, you know, I wanted to, I, I wanted to point this out. In the Williams case, Judge Kuczynski, and the only reason I, I mentioned him by name is because he was sitting by designation in the district court, not in the circuit court. But he recognized that, that, that this argument could have been made. But hey, he still, he still had other options available. And, and I think that he recognizes, or I'm sorry, I think that he addresses this quite clearly. He says, in marked contrast, and this is exactly what happened here, to counsel's opening statement, which consists largely of promises of the exculpatory evidence he would present, his summation consisted entirely of trying to poke holes in the prosecution's case. Either strategy may be appropriate, depending on the case. But he says, the jury for the former, and delivering only the latter, is a recipe for failure. And he, I mean, he discusses this more at length. I won't bore the, the court with additional law quotes. But, but Williams does address this. And I think that that's the case. When you promise the jury that the defendant is going to testify, it alters the course of the whole trial. So you're saying that there would be a reasonable probability that the jury would have acquitted him? Well, yes. And that the course of the trial would have changed. And not just acquitted. There could have been a mistrial. It's not that the course of the trial would have changed. You're right, Your Honor. You're right, Your Honor. But acquittal is not the only that the proceedings would have, I believe, been different. And a mistrial is also something. So just one juror, one juror holding out. And I want to stress that the reasonable probability standard is less than a preponderance. Strickland expressly discusses this. It rejects the preponderance of the evidence standard. It's not that it has to be more likely than not that the outcome of the trial would have changed. It's simply, it's less than a preponderance. That is how Strickland expressly defines the standard. And so it's not, it is not an extremely high one. And when we're talking about whether one juror in the face of very self-interested witness testimony could have believed in this case, I think that the opening statement of promising the defendant's testimony and then failing to deliver. And then, in his summation, the only explanation he gave was he said, look, I made you a promise I didn't deliver, but we didn't know it was coming at us. That simply buttressed the government's evidence, essentially. And it gave even more reason to doubt the credibility of defense counsel when he's saying, hey, we didn't even know it was coming at us, so now the defendant's definitely not going to testify. All of the cases recognize that the negative inference that the jury can draw based on the defendant's not testifying, they could believe that otherwise he would have perjured himself, that he would have been a terrible witness, that he would have any number of things. The cases recognize the prejudice that is inherent in this type of not fulfilling this type of promise. And in this case, the defense was built around, it was completely dependent, the way that he structured this case, it was completely dependent on the defendant's testimony. And I think that at least under Rashad, the prejudice problem, one, we don't know whether what defense counsel may have done differently had he not structured the case in that way. Maybe the case would have turned out differently. The evidence would have been presented differently. This would be a different case, perhaps, if counsel had not structured his whole argument based on the defendant's testimony. So I think under Rashad, at the very least, that a remand is warranted to see whether or not this would have altered counsel's strategy, and then understand better whether or not there could be a reasonable probability of a different outcome. All right. We'll give you a couple minutes to reply. Ms. Hart-Mahan. May it please the Court, Alyssa Hart-Mahan for the United States. The defendant in this case was charged with 25 counts of willfully preparing false tax returns. And the indictment alleged that the defendant added false, unreimbursed employee expenses to those tax returns while knowing that his clients were not entitled to take those expenses as deductions. The evidence at trial was six of defendant's clients, all of whom testified consistently that the defendant added these false, unreimbursed employee expenses to their returns, and that they had not provided the defendant the information underlying those claims on the tax returns. And significantly, there was also a videotape of an undercover IRS agent who went to the defendant to have him prepare her return. This videotape corroborated all of the testimony of the six other clients. The fact pattern was almost identical. The defendant added unreimbursed employee expenses that were made up out of whole cloth. The video makes clear the IRS agent did not provide him with information. What about your friend's argument that the error in the opening statement is prejudicial? There's no reasonable probability of a different result here, Your Honor. Given the consistent, credible testimony of the government's witnesses and the other documentary evidence here, even if defense counsel had not promised that the defendant was going to take the stand, the jury would have convicted the defendant anyways. It's rare, Your Honor, in a white-collar case that you have a videotape of the defendant committing the crime. Typically, the government has to provide substantial evidence. Here, there was direct evidence that the jury could judge for themselves that the defendant had made up these deductions out of whole cloth and did it, you know, that his motive was to get refunds for his clients. He specifically said, look, there, I changed it to a refund to the IRS agent after adding these false deductions to her return. Can I ask you about the, well, the closing statement together with the charge when the government said he is deemed to know, coupled with the charge relating to CPA's duties under the regs? Yes, Your Honor. And as we acknowledge in our brief, it was error for the prosecutor to say that the defendant was deemed to know. The government bears the burden of proving all the elements of the offense beyond a reasonable doubt. And the jury was properly instructed regarding the government's burden and that the defendant had no burden to present any type of evidence. I would note that if you read the prosecutor's closing in its entirety, the focus of this case was that the defendant knowingly added these false deductions to the returns. Now, in the defense closing, defense counsel attempted to use that return prepare instruction to suggest that the defendant didn't know what his legal duty was, wasn't exercising due diligence, didn't know what best practices were for a return prepare. The government's response was he knew these deductions were false. There was a reference to the return prepare instruction. But as this court has recognized in United States v. Hall, the jury is properly instructed regarding the elements of the offense and the government's burden of proof that can cure an error in a prosecutor's closing statement. And this charge, as I remember, it was on the regs governing CPA's, was agreed to by both sides, right? Yes, it was jointly proposed, Your Honor. Can I ask you about the restitution question, which you agree has to go back, right? Yes. In the defendant's reply brief, he mentions two specific errors. The loss attributable to the undercover agent and the 4,000-some dollars return by lien. Government doesn't have any problem with those, does it? No, absolutely not, Your Honor. And what about his third point that the district court has to explain the calculation on the record? Your Honor, we have no objection to providing additional evidence on remand regarding the loss calculations. And as we mentioned in our brief, we can provide the district court with updated figures reflecting any payments made by the clients since the sentencing occurred in this case in 2012. If the court has no further questions, we ask you to affirm defendant's convictions and remands to allow for correction of the restitution. Thank you. Why don't you take a minute? I'll be brief. I do just want to follow up on the return preparer instruction. First, the government does concede error in the prosecutor's statement, but that statement was made because the return preparer instruction allowed her to make it. So if the statement was wrong, then the preparer instruction, which allowed her to make it, was also wrong. And we are raising this as an ineffective assistance of counsel claim. Counsel did jointly propose this. But to the extent that the government argues that defense counsel used this in his favor, if the court actually reads the entirety of the summation, which I did again last night, counsel actually runs from this instruction. Any number of times he attempts to make a distinction between a return preparer and a CPA, and he says, no, no, no, there's no evidence that Mr. Udo is a return preparer, he's a CPA, he's not a return preparer, he's a CPA, so it's unclear whether or not he knows what return preparers are supposed to do. That argument is ridiculous because of the substance of the return preparer instruction, which makes clear that a CPA who prepares returns is a return preparer under the instruction. But I do want to make clear, I mean, that's another reason why counsel is ineffective, but I do want to make clear that this was not a favorable instruction to him, and he did not use it as such. It was much more disfavorable to the defendant because it allowed, and it's an instruction that is quite shocking to give to a jury. It's inappropriate in and of itself. But it did allow the jury, especially without the knowledge, the separate criminal liability to the violation of professional standards, i.e., he did not exercise due diligence, or he did not ask adequate questions. And there's any number of aspects of the instruction which indicate some provisions of the tax code do require additional information. And before I sit down, I want to make clear that it's this instruction in combination with the willfulness instruction which requires that the defendant knowingly violate a legal duty. This created that legal duty. And in introducing this tax preparer instruction, this is what the district court said. Didn't the good faith language cure that problem? Well, Your Honor, interestingly, the good faith language actually, and I didn't bring it up. The good faith language says the following. Good faith is an absolute defense to the charges in this case. This is because good faith is simply inconsistent with willfully preparing a false or fraudulent tax return. While the term good faith has no precise definition, it means, among other beliefs and the intent to perform, all lawful obligations. The good faith instruction is keyed directly to someone's intent to perform lawful obligations. So in that sense, it highlights again that the willfulness element deals with someone's knowledge and intent to violate their, quote, legal duty as opposed to the factual unknown, providing a false, I'm sorry, a knowingly false tax return. But in getting back to the district court's introduction of the tax preparer Didn't the district court say you may generally rely on good faith? Am I remembering that correctly? Which there's some equivocation there. I don't Maybe I misremembered. You may be right, Your Honor. At the moment, I'm not seeing that. But your recollection may be better than mine. But I am not seeing it. But in introducing this instruction, the district court stated the reason I'm about to describe certain provisions of the tax law is because some of the elements of the charged crimes that I've described depend on the application of the tax code. So in introducing this, and then the very first instruction was the tax preparer instruction. So in introducing this, she basically said, look, some of the elements, i.e., the willfulness element, depends on this instruction. And so you essentially apply them together. I don't think she said that. I think she set out the elements discreetly from Absolutely. Yes, yes. That's exactly what she did. She set out the elements first and then said, and now I'm going to give you some instructions about the tax laws. And then she said, in doing that, the reason I'm about to describe that is because some of the elements, again, that she had just given, I have described depend on the application of the tax code. So in that sense, I'm saying she did directly key this, these instructions, these tax code instructions, to the elements in a way where the jury could have thought that the willfulness instruction was informed by this legal duty. This is really the only place in the instructions and in the trial where the jury was told about what actually the legal duty was. And in that sense, I think that the tax preparer instruction should not have been proposed by counsel. I think that it was deficient to do so and prejudicial. And if there's nothing further, we just ask for a remand under Rashad on the IAC claims or in the alternative for a new trial on the IAC claims, if available on the record, and on the instructional error that we didn't discuss for the district court's failure to instruct on the knowledge element. Thank you.
judges: Henderson, Tatel, Griffith